**ALLEN v TOTH** et

Ohio Appeals, 2nd Dist, Montgomery Co

No 1317. Decided July 9, 1935

C. E. Elliott, Middletown, and Ralph Stutz, for plaintiff in error.

Francis C. Canny, Dayton, for defendants in error.

## OPINION

By BARNES, PJ.

The above entitled cause is now being determined on proceedings in error from the rulings, orders, finding and judgment of the Court of Common Pleas of Montgomery County, Ohio.

The parties appear in this court in the same order as in the court below. Plaintiff by his petition sought to have a conveyance from Teresa Toth to her husband, Alex Toth, executed January 4, 1930, set aside on the ground of fraud and that said real estate may be sold as upon execution and the proceeds applied to plaintiff's debt against Teresa Toth. The petition among other things, sets out the judgment against Teresa Toth and that the conveyance made by her to her husband was without consideration and made to hinder and delay creditors and with fraudulent intent.

The separate answers of the defendants for want of knowledge deny the existence of any judgment against her in any sum whatever and further deny the validity of any judgments pending against her. Admissions were made of the conveyance from Teresa Toth to Alex Toth but expressly denied that such conveyance was made to hinder or delay creditors or that such was made with fraudulent intent. All other allegations of the petition were denied.

The following narrative of established facts will disclose the nature of the controversy and the manner in which the claimed errors arise.

In 1925, the plaintiff, Allen, purchased from one Miller a farm of 168 acres situated in Warren County, Ohio, and as part consideration executed a note for $14,500 secured by first mortgage on the premises purchased.

In 1927, the plaintiff, Allen, sold said farm to Julia Paul and as consideration therefor Mrs. Paul assumed the balance of Allen's first mortgage in the sum of $13,500 and executed to him a second mortgage in the sum of $2377.00. On March 3, 1928, Julia Paul and her husband sold said farm to the defendant Teresa Toth for a total consideration of $22,500. The total consideration was allocated as follows: the assumption of balance due of $13,500 on the Allen first mortgage to Miller, the second mortgage of $2377 from the Pauls to Allen, the third mortgage of $1500 from Mrs. Toth to the Pauls and the balance in cash. The defendant, Alex Toth did not join in the mortgage the same being given as a purchase money mortgage. The first mortgage from Allen to Miller of $13,500 was not due until 1930. The second mortgage from the Pauls to Allen was past due.

Immediately following the conveyance to Mrs. Toth, she entered into a contract of lease with a tenant. On April 25, 1928, Miller instituted an action for appointment of a receiver for the farm by reason of defaulted interest on the first mortgage note. The past due interest upon which the application for appointment of receiver had been predicated had not been assumed by Mrs. Toth. This default interest was the direct obligation of the Pauls under their assumption in deed from Allen to Paul. Allen, of course, was liable for the amount by reason of his executing the note and mortgage.

In the application for receivership, Allen, the Pauls and Mrs. Toth were made parties defendant and served with summons. Alex Toth was not a party to this action.

Very shortly after the institution of the receivership action by Miller, the Pauls at the instance of Mrs. Toth made a payment of $800.00 on the default interest. Neither of the defendants filed any pleading and a receiver was appointed on Miller's action on August 14, 1928. The tenant secured by Mrs. Toth remained in possession but thereafter accounted to the receiver. There is evidence in the record that following the action by Miller for receiver Mrs. Toth sought and had an interview with the attorney in Lebanon who acted as the scrivener in making out the deeds from the Pauls to her. This attorney, however did not represent her at any time. Other than activities of this kind,

Mrs. Toth took no steps to contest the receivership. At the time of the appointment, she as well as all other defendants was in default.

Counsel for the Toths parenthetically questions the right of the court to appoint a receiver under the existing conditions, but apparently recognizes that the question is res adjudicata and in any event, is not involved in the present case. September 11, 1930, F. D. Miller brings action for foreclosure of mortgage and personal judgment for amount due. This action by Miller was brought very shortly after his mortgage note became due. Allen, the Pauls and Mrs. Toth were parties defendant in this action. On September 29, 1930, Allen filed a cross petition for foreclosure of his note and second mortgage and sought personal judgment against Julia Paul and Mrs. Teth. Summons was served on cross petition. Neither of these defendants filed any answer either to the original foreclosure suit of Miller or the cross petition of Allen.

On February 2, 1931, the receivership action and foreclosure action in the Common Pleas Court of Warren County were consolidated and on same date, judgment was entered against the defendants for the amount due on the first mortgage note and also the mortgage ordered foreclosed and premises sold. The personal judgment was against Allen, Mrs. Paul and Mrs. Toth. On the same day, judgment was entered against Mrs. Paul and Mrs. Toth on the second mortgage note executed by Mrs. Paul to Allen and afterwards assumed by Mrs. Toth as heretofore stated. In March 1931, the farm being sold under foreclosure proceedings, the same was bought in by Allen at sheriff's sale for the sum of $13,-500.00.

This was not sufficient to pay off the balance of the first mortgage note together with interest due Miller. After the payment of costs and taxes the sum of $12,-409.64 was applied on the first mortgage obligation and the deficiency judgment, then remaining against Allen, Mrs. Paul and Mrs. Toth amounted to $4243.15.

The judgment against Mrs. Paul and Mrs. Toth on the second mortgage note to Allen amounted to $2936.42.

Shortly thereafter, Allen paid to Miller the sum of $4243.15 being the sum total of the deficiency judgment and thereby was subrogated to all rights against Mrs. Paul and Mrs. Toth by reason of their having assumed the payment of the original note and mortgage.

On March 18, 1931, the plaintiff, Allen, caused to be issued from the office of the Clerk of Courts of Warren County a foreign execution to the sheriff of Montgomery County, Ohio, and on March 21, 1931, levy was made on the following described real estate.

"Being the undivided one-half of lot 27001 of the revised and consecutive numbers on the plat of the City of Dayton, County of Montgomery, State of Ohio."

Previously, to-wit, on the 4th day of January 1930, Teresa Toth had conveyed her undivided one-half interest in lot 27001 aforesaid to her husband, Alex Toth. The consideration as expressed in the deed is one dollar and other valuable consideration. The plaintiff, Allen, alleges in his petition that in truth and in fact there was no consideration whatever passing from the defendant, Alex Toth to his wife, the defendant, Teresa Toth.

The plaintiff asks that the same be set aside as in fraud of this plaintiff who was a creditor of Mrs. Toth at the time conveyance was made.

Following the institution of this action to set aside the conveyance plaintiff, by his counsel, served notice upon the defendants for taking of depositions and at the time named, obtained the evidence of Mr. and Mrs. Toth.

During the trial in the court below, a part of the depositions of Mr. and Mrs. Toth was read in evidence. This evidence was objected to, on the specific ground challenging the ability of the interpreter to properly and correctly interpret the questions and answers. It appears from the record that Mr. and Mrs. Toth are Hungarians and neither are able to speak the English language fluently. They understand it to a limited extent. The depositions disclose that counsel for the Toths objected to the taking of the evidence by an interpreter. It appears from the agreed statement of facts on page 10 of the record that it was stipulated that the depositions might be filed and that failure to file them more than one day before the trial would be waived. We think that if counsel desired to take advantage of this claimed infirmity it should have been raised by motion before proceeding to trial.

Of course, the Toths being present in court at the trial, their depositions could

only be used insofar as there ▮▮ was contained therein a declaration against interest or by way of impeachment after they had given testimony during the trial. So much of the depositions as were read in evidence contain the statements by both Mr. and Mrs. Toth that the conveyance of the undivided one-half was made because Mrs. Toth was not well; that no consideration passed from Mr. Toth to Mrs. Toth and that she desired to save the trouble if she should die.

In the trial of the case, Mrs. Toth was called as a witness in her own behalf and was inquired of why she conveyed her undivided interest to her husband. Quoting literally from page 67 of the record, we find the following question and answer:

"Q. State the reason why you conveyed that interest to her husband. A. Because she was ill."

Nothing further appears in her testimony touching the question of consideration.

In the lower court Teresa Toth testified by interpreter. Alex Toth was also called as a witness on behalf of the defendants and testified through an interpreter. Among other things Mr. Toth testified that he did not ask his wife to convey her interest to him but that he found out that she had conveyed it about two days thereafter. The question was asked as to how he found it out and the answer was "She told him." He further testified as to the illness of his wife, but there is no testimony of Mr. Toth when first called, either in direct or cross examination, as to any consideration passing from him to his wife.

There does appear in the record as a statement by counsel, in substance, that the proof would show that the husband paid off the mortgage to the Fidelity Building and Loan Association in the amount of approximately $4000.00, but the preceding questions did not make this proffer responsive to any question asked. Later in his testimony the following question and answer appears:

"Q. Since you took title to the one-half interest your wife conveyed to you have you incumbered, taken a mortgage on same since that time?"

"A. Her brother once—his brother once gave him $4000.00 but he does not remember whether it is before or after."

On motion this answer was stricken out. On cross examination Mr. Toth testified in substance that he does not remember when or from whom he got the deed; says he first saw it when he was looking at other things and got it into his hands; that he only knew about the deed because his wife told him and that the only way he ever saw it was when he happened to run across it in looking through some of Mrs. Toth's effects. Under the state of the record, there is a serious question as to whether there was a delivery. Counsel for plaintiff at the close of the testimony, took leave to amend his petition raising the issue that there was no delivery.

The taking of testimony was closed in June 1934 and the cause taken under advisement by the trial court.

Thereafter on October 20, 1934, on application of counsel for defendant, the case was opened up and defendants permitted to introduce further testimony. Counsel for plaintiff objected and saved his exceptions. This action of the court was based on its conclusion that the action in limiting the testimony under the general denial was not warranted, and that in the interest of justice, further opportunity should be given to the defendants to present evidence which was considered material to the issue.

Under all the conditions, we think this is a matter within the sound ▮▮ discretion of the trial court and we do not find any abuse of discretion.

At this hearing the defendant, Alex Toth was further questioned and in addition a deputy recorder testified in substance to the records in the Recorder's Office disclosing a mortgage of $6500.00 against the Dayton property of the Toths executed in November 1925 to the Fidelity Building and Loan Association of Dayton and that the cancellation of this mortgage, as written on the margin of the record, was dated January 22, 1929. From other evidence in the record it would appear that the balance due at the date of cancellation was approximately $5300.00.

In the further interrogation of the defendant, Alex Toth, it was sought to connect up the paying off of this balance of the mortgage obligation as the consideration for the execution of the deed by Mrs. Toth to Alex her husband.

Mr. Toth does present competent evidence that he paid off the amount, having obtained $4000.00 of the amount from his

brother and the balance of $1300 from his building and loan account. However, a letter from the Fidelity Building Association introduced by agreement as joint Exhibit 1, discloses that the sum of $1378.61 withdrawn on January 18, 1928 and applied on the mortgage note was a joint account of Mr. and Mrs. Toth.

Counsel for the Toths following objection by plaintiff to certain proffered testimony, made statement to the court that the proffered testimony would disclose that the brother of Mr. Toth had his money in the West Side Building Association and that the defendant, Alex Toth got a letter of authority from his brother in Kentucky to go out to the West Side Building Association, which he did, and affected a transfer of the stock which the brother had out there to the Fidelity. The letter from the General Manager and Secretary of the Fidelity introduced as joint Exhibit 1, contains the statement that he has no means of knowing where the $4000.00 was obtained. This would seem to be contradictory of what counsel sought to prove.

In this interrogation of Mr. Toth it was sought to bring out the conversations between Toth and his wife as to the moving consideration for the deed. This was objected to on the ground that under §11494 GC, a husband or wife can not testify concerning any communication made by one to the other or any act done by either in the presence of the other, unless the communication was made or act done in the known presence of a third person competent to be a witness.

The trial court at first overruled objections, but afterwards suggested that the witness should be inquired of as to what was done. At this time, counsel was having difficulty in interrogating the defendant, Alex Toth, without the use of an interpreter. During the examination an interpreter was called and sworn. Thereupon, the first question propounded was the following:

"Q. Why did your wife transfer her half interest in your residence to you?"

The question was objected to. The following was added to the foregoing question before answer "Give all circumstances."

Again objection interposed, overruled and exceptions.

"A. He says the reason Mrs. Toth signed this property over to him was because of sickness. Also the fact that she felt she owed him money that he paid off the mortgage with."

Motion to strike out answer overruled. Exceptions.

Thereafter a separate motion that part of the answer herein stating what his wife felt be stricken out. This was also overruled and exceptions.

We think throughout this testimony there appears error in the court's ruling in permitting the husband, Alex Toth, to answer questions that were mere conclusions and in some instances an indirect method of giving expression to the conversation between himself and his wife. When this evidence is eliminated nothing remains of substance tending to show that the Toths had in contemplation the paying off of the real estate mortgage as a consideration for the deed from Mrs. Toth to her husband, Alex for the undivided one-half interest. After this case was opened up, Mrs. Toth was not recalled and her testimony given at the June date clearly implies no valuable consideration. The trial court found in favor of the defendants and dismissed plaintiff's petition. Motion for new trial was filed within statutory rule and on same day overruled. Judgment was entered on the court's finding. This is the final order from which error is prosecuted in this court. The petition in error sets out seven separate specifications of error but in the briefs these specifications are re-grouped and it may be properly stated that counsel for plaintiff buttresses his proceedings in error on two grounds:

(1) That the court erred in its ruling on the admission and rejection of testimony.

(2) That the finding and judgment of the court is against the manifest weight of the evidence and contrary to law.

Counsel for defendants in his brief urge that plaintiff's action is brought under the provisions of §§11104 and 11105 GC, whereas counsel for plaintiff insist that §8618 GC should also be given application and his rights determined under either or both.

Sec 11104 GC in part reads as follows:

"and a sale, conveyance, transfer, mortgage or assignment made, or judgment pro-

cured by him or them to be rendered, in any manner, with intent to hinder, delay or defraud creditors, shall be void as to creditors of such debtor, or debtors at the suit of any creditor or creditors."

Under §11105 GC, the application of §11104 GC is limited as follows:

"The provisions of the next preceding section shall not apply unless the person or persons to whom such sale, conveyance, transfer, mortgage or assignment is made, knew of such fraudulent intent on the part of such debtor or debtors, etc."

Giving application to this language of the two sections of the Code, it at once appears under the plain language that plaintiff would have no right of action under these sections unless he alleges and █ proves that the defendant, Alex Toth, knew of the fraudulent intent on the part of his wife, Teresa, at the time of making the conveyance to him. The Supreme Court of Ohio in the case of Carruthers v Kennedy, 121 Oh St, 8, had under consideration the interpretation of §§11104 and 11105 GC and very clearly and positively announced that knowledge of the purchaser of the insolvency, intent to prefer or defraud by the debtor must be shown or the conveyance will be legal. It clearly appears that the petition in the instant case is broad enough in its allegations to invoke the provisions of §§11104 and 11105 GC. On the question of knowledge there is no evidence whatever either way. Counsel for plaintiff urges that the husband as the head of the household where summons's were served on the wife in the receivership action and subsequent foreclosure action would necessarily have knowledge of the wife's obligations in the purchase of the farm in Warren County.

We assume that generally a wife would talk over her business ventures with her husband and very slight evidence is all that would be required to bring home to the husband knowledge of his wife's business deal of purchasing and assuming obligations for the farm.

The difficulty in the instant case is that we do not even have this slight evidence. From this mere assumption of usual practice in the ordinary household, we can not go farther and assume that the husband knew of the wife's indebtedness in the absence of any direct testimony. █ Under this situation, we are forced to the conclusion that no relief can be given to the plaintiff under the provisions of these two sections.

Sec 8618 GC is not limited by the provisions of §11105 GC or any other statutory enactment. This section may █ properly be given application in the instant case even though the petition in its allegation is broad enough to invoke the other two sections heretofore cited.

The law is well settled and needs no citation of authority that where a petition sets out fact under which any relief may be granted, the plaintiff will not █ be denied merely because proof falls short of establishing some of its allegations, if the ones proven are sufficient in law to grant any form of relief. This section was originally enacted in 1810 and there had been no change in substance since that time. In fact, this section is no more than an adoption of the common law by legislative enactment.

Generally speaking the acts which constitute fraud are very clearly defined and may be summarized as follows:

The conveyance or transfer sought to be set aside must have been made without

(1) Any valuable consideration or

(2) If any moving valuable consideration it must be so inadequate as to imply fraud.

(3) The grantor must not have other property sufficient to amply pay his debts.

(4) The creditor must have been an existing creditor at the time of conveyance or transfer sought to be set aside.

(5) Under some situations, a subsequent creditor may have a right of action.

Subdivision 5 would have no application in the instant case. The leading case in Ohio on the subject is the very old case of Crumbaugh v Kugler et, 2 Oh St, 374. This case was decided in 1853 and the principles there announced have been consistently adhered to in all subsequent decisions. The syllabus reads as follows:

"A person largely indebted can not give away his property without amply providing for the payment of his debts. The suspicion of a fraudulent intention in making such gift may, in many such cases, be re-

465

moved by proper evidence, but the question always remains whether the conveyance operated to the prejudice of creditors."

"Such a gift is never upheld unless property is retained, clearly and beyond doubt, sufficient to pay all the donor's debts."

"In the absence of any intentional fraud, however, such a conveyance, though void as to creditors who were such at the time of the gift, may be good as to subsequent creditors."

In the body of the opinion it will be observed the court makes the announcement that it is not necessary, under such a state of facts, to show a design or intent to defraud. The fact that the debtor gives his property away and thereby deprives the creditors of collecting his indebtedness will imply fraud as a matter of law.

On the question of the debtor retaining adequate property to amply pay his debts, this case of Crumbaugh v Kugler when applied in its principle to the instant case, would clearly show that Mrs. Toth did not retain sufficient property to pay her debts. The uncontradicted evidence discloses that the market value of the property at the date of the conveyance on January 4, 1930 was not sufficient to pay off the first mortgage and interest. The question as to whether the property is ample is one of fact and is not a question of what was the honest opinion of the debtor. This answers the argument urged that Mrs. Toth must have considered her property ample due to the fact that shortly previous she had purchased the farm at a consideration of $22,500. Under the record, we are convinced that Mrs. Toth contracted to pay much more than the farm was worth. She probably was imposed upon and had she in due season, sought to set the deed aside, she probably would have been granted relief in such an action. We do not mean to intimate that this is because of her bad judgment and agreeing to pay an excess value, but because of the failure to clear the property of past due interest and through which such failure receivership was sought and obtained by the original owner, Mr. Miller. It might further be said that however much Mrs. Toth may have been imposed upon, no wrong doing can be traced to the plaintiff, Allen Mrs.

Toth made her deal with the Pauls and they are of the same nationality as she and her husband.

Another principle of law is that the conveyance from the wife to the husband or vice versa will be looked upon with suspicion if made at a time of actual or threatened insolvency.

Under the present law, husband and wife are permitted to contract with each other and their contracts, if honestly made, are entitled to the same protection as are contracts among strangers. On the question of failure of consideration, we would further cite the following:

19 Ohio Jurisprudence (Fraudulent Conveyance, §89).

19 C.C., 425.

11 N.P. (N.S.), 26.

The rule that conveyance may be set aside for inadequacy is discussed in the following:

19 Ohio Jurisprudence (Fraudulent Conveyance, §75).

10 Oh Ap, 487.

23 Oh St, 473.

Coming now to apply the facts in the instant case to the law, we first consider the question of claimed error in the introduction of evidence.

We have heretofore stated, that, in our judgment, permitting the defendant, Alex Toth, to give in evidence conclusions or in an indirect way conversations between himself and wife was improper under the rules of evidence. The question remains as to whether or not this error was prejudicial. At the time of its presentation, the court stated that for the moment the objection would be overruled, but later when the case would be decided, it would then be definitely determined whether or not such evidence was being considered.

The record does not disclose that the trial court made any other or further determination than at the time of trial. The written opinion of the trial court and the journal entry leads us to the conclusion that this improperly admitted evidence was considered. We think the error was prejudicial.

On the question of failure of consideration, we think the finding of the court is against the manifest weight of the evidence. We fully appreciate the difficulty encountered by counsel for defendant in having clients who speak the English language with some difficulty. We also feel very keenly the apparent bad deal that Mrs. Toth was drawn into by the possible machination of someone. However, as heretofore stated, the plaintiff, Allen, is not shown to be a party to any wrong doing.

It also appears that possibly Mr. Toth was the industrious and frugal head of the household who accumulated and saved the moneys by which the Dayton property was purchased and business building afterwards erected thereon and out of the kindly feeling to his wife made an out right gift to her of an undivided one-half interest in the property.

This he had a right to do when creditors were not affected, and so far as appears, none were affected through his gift. After this gift was made the undivided half became the absolute property of Mrs. Toth charged with her debts and obligations, just the same as though she had purchased and paid full value therefor. No equitable right would remain in Mr. Toth from the mere fact that he had made the gift to his wife years before. Considering the state of the record, where Mrs. Toth testifies that her reason for conveying her interest was due to ill health and this, in substance, being the same testimony of Mr. Toth, we are unable to conclude, after eliminating the improperly introduced testimony that sufficient remains in the testimony of Mr. Toth, when recalled, to overcome previous testimony of these parties, the import of which left no other inference than that there was no passing consideration between the parties for the conveyance. For this reason, we think the finding of the trial court was against the weight of the evidence. Since the case is to be remanded for new trial, it will be proper to make further comment on the question of adequacy of consideration. If, perchance, the evidence is such that could give full force to counsel's theory that the $4000.00 with which the husband paid off the mortgage should be taken as a consideration for the conveyance from wife to husband, we would still be of opinion that the amount was inadequate. Giving this transaction between Mr. Toth and his brother the most favorable interpretation it could not be said that more than one-half of the amount could, under any theory, be the obligation of Mrs. Toth. There is no evidence at all as to the character of the obligation, if any, from Mr. Toth to his brother. It may be that the brother holds the note of both Mr. and Mrs. Toth, in which event, there would be a joint obligation and in that instance there could be no possibility of reading into the transaction a consideration from the husband to the wife. All the facts surrounding it are very vague and uncertain. If on the rehearing it is properly established that $2000.00 of the consideration would pass from the husband to the wife, we would still hold, under the evidence in the present record, that the amount was inadequate and that the excess over and above the $2000.00 would be applied on plaintiff's claim. This is the procedure announced in **Huwe v Mack, 10 Oh Ap, 487, Oliver v Moore, 23 Oh St, 473.** The judgment of the lower court will be reversed and the cause remanded for re-trial.

Exceptions will be allowed to the defendants.

HORNBECK and BODEY, JJ, concur.