**W. L. ADAMSON CO. v SHROYER, et.**

Ohio Appeals, 2nd Dist, Montgomery Co

No 1655.   Decided Dec 17, 1940

Thomas, Hyers, Leyland & Stewart, Dayton, for defendants-appellants.

Froug & Froug, Dayton, for plaintiff-appellee.

## OPINION

BY THE COURT:

This cause was begun in the Court of Common Pleas on February 4, 1936. The case pended in that Court until 1938 when it was dismissed for want of prosecution, but afterwards reinstated upon the motion of the defendant. Thereupon motions and demurrers were filed and disposed of.

The amended petition alleges that the plaintiff is a corporation and that at the January 1938 term of the Court it recovered a judgment against the defendant, William Shroyer, in the sum of $1927.57. An execution was issued and returned unsatisfied.

It is alleged that defendant, William Shroyer, did fraudulently and with intent to defraud the plaintiff, transfer by deed to Edna Shroyer, his wife, without consideration certain real estate; that the transfer was made on or about January 13, 1936, at which time the claim upon which the judgment was obtained was due and owing and that the defendants had knowledge of the claim and with intent to defraud executed the deed; that William Shroyer is the true and lawful owner of the real estate and that he "has" no other property and that the deed should be declared null and void and the premises be subjected to the satisfaction of plaintiff's judgment and the prayer is to this effect.

An answer filed by Edna Shroyer "for the defendants herein" admits that William Shroyer conveyed the real estate by deed on the 13th day of January, 1936, to the defendant, Edna; denies that said conveyance was made fraudulently with intent to defraud plaintiff and denies that the same was without consideration; denies that the plaintiff had any claim due and owing at the date of or prior to the date of the conveyance and denies that William Shroyer is the true and lawful owner and there is a general denial to all other matters.

The Court below permitted the answer to be amended at bar by substituting for the word "has" appearing above in quotation marks the word "had".

The cause was tried and a finding made upon the pleadings and the evidence in favor of the plaintiff and that the defendant, William Shroyer, did fraudulently and with intent to defraud,

transfer to the defendant, Edna Shroyer, without consideration the real estate and that the deed is null and void and that the real estate is the property of William. Afterwards motions for judgment non obstante veredicto and for new trial were filed and both overruled and it was decreed that the deed from William Shroyer to Edna, his wife, be declared null and void and that a deed be made reconveying the property to William and upon his failure to make the same that the decree shall act in lieu of the reconveyance.

Notice of appeal was filed, bond given and a Bill of Exceptions filed.

The notice of appeal was from the final order of the court, dated the 22nd of May, 1940, and was upon questions of law and fact.

The evidence supported the formal allegations. As to those in controversy, the facts are somewhat unusual. The deed to the wife was dated January 8, 1936. The plaintiff obtained a judgment against William Shroyer in a separate action on February 7. 1938, for the sum of $1927.57. The action arose out of the alleged theft of merchandise belonging to the plaintiff. William Shroyer was indicted and tried on two counts in reference to said property. one count for burglary and larceny and the second count for receiving and concealing stolen property. He was found not guilty of the burglary, but was found guilty on the second count of receiving stolen property. The date of the offense upon which Shroyer was convicted was alleged to have been September 17, 1935.

On the trial to support the charge of fraud, the testimony of the Recorder was introduced as to the existence and record of the deed. Testimony was offered as to the indictment and conviction of the appellant for receiving stolen property. Counsel for appellee, in addition to such testimony, called both appellants, William Shroyer and Edna Shroyer, his wife, for cross-examination and then rested his case. The property conveyed was the homestead occupied by the husband and wife, having been purchased by the husband about fourteen years before the date of trial and remaining in his name until the transfer sought to be set aside. The defendant, William Shroyer. was indicted on November 22nd, 1935, plead not guilty and on February 3, 1936, was found guilty.

As stated, the deed was made on January 8, 1936, less than one month prior to the verdict of guilty. On February 8, 1936, the defendant was transferred to the penitentiary to serve his sentence.

The judgment based on the wrongful conversion of the property was rendered on February 7, 1938. The action to set aside the deed was heard on September 25, 1939, and the judgment thereon rendered on May 22nd, 1940.

The Assignment of Errors filed in this Court sets up ten alleged errors, each in a separate paragraph. The first is to the effect that the Court erred in overruling defendant's motion to dismiss amended petition and to grant judgment to the defendants-appellants. The second to the fifth grounds are to the effect that the judgment is contrary to the weight of the evidence and not sustained thereby. The sixth ground relates to the admission of evidence; the seventh to a variance between the pleadings and the proof. The eighth and ninth grounds of alleged error relate to the error of the Court in overruling defendant's motion for new trial and for judgment non obstante. We pass only on those now urged.

The Bill of Exceptions discloses the testimony of both William Shroyer and his wife. It may be said in passing that there does not appear in the record any agreement of counsel that the Bill of Exceptions should constitute the evidence in this case. This being an equitable action and the appeal being on law and fact there should be some agreement as to what should constitute the testimony in this Court. However, both counsel seem to concede that the Bill of Exceptions constitutes the evidence to be considered.

William Shroyer testified on cross-examination. He states that he did not know anything about the rendition of the judgment, being then in the penitentiary. He disclaimed any knowledge of the theft of the property involved, it being cigarettes belonging to the plaintiff. He knew that he was coming up for sentence on February 6, 1936, and on January 13, 1936, he transferred the property to his wife, stating that the property belonged to her in the first place; that he had no other property except a cemetery lot; that there was no encumbrance upon the property when the transfer was made; that he and his wife never had any agreement about it, but he just transferred it, stating again, that it belonged to her in the first place because she owned it, but he admitted that the property had been in his name continuously for fourteen years and that there was no record title in her name. Counsel for Shroyer stipulated "that the title of the real estate was in William Shroyer's name prior to the transfer". Upon being asked, "What was it that caused you to transfer your property to your wife" Shroyer made the answer,

"Well, for the protection of the home and family, and she was entitled to it; I figured I would die in Columbus anyway, I didn't count on getting out of there alive.

Q. That's your only reason?

A. Yes, sir, absolutely.

Q. You felt she should be protected?

A. Yes, sir, absolutely."

Had counsel for plaintiff refrained from further cross-examination some of the questions now before this Court might have been avoided, provided the facts were not disclosed by the examination by opposite counsel. However, after a rather long series of questions and answers, these questions were asked,

"Q. Did your wife pay you any money for this property?

A. I owed her over eleven hundred dollars for work in the restaurant or a thousand dollars, about fifteen dollars a week for eighteen months.

Q. So when you answered before that you transferred the property to her because you felt she should have it and you would not come back from the Pen alive—

A. That's correct.

Q. Now, which is correct, because of the money you claim you owed her or because you wanted to protect her?

A. I owed her plenty for that question.

Q. Which is correct?

A. That's it right now what I told you.

Q. That you owed her plenty?

A. I owed her close to eleven hundred dollars.

Q. Eleven hundred dollars, and you decided that you were to pay your debts at that time, is that correct?

A. I tried to, yes.

Q. You knew that W. L. Adamson had a claim against you didn't you?

A. I didn't know it at that time, I thought they had against some other parties that were interested."

William Shroyer stated that the claim of the Adamson Company arose out of the theft of the cigarettes and that he knew, prior to the time he was sentenced, that the cigarettes were stolen from the Adamson Company and were involved in the matter for which he was sentenced. There was no direct examination of the defendant.

Thereupon Mrs. Edna Shroyer was examined, as on cross-examination, much of which is not of importance here. She stated that she was living in the house in question and had title thereto since 1936. The following questions were put and answers given,

"Q. What, if anything did you pay to your husband for that piece of property?

A. I gave him a dollar.

Q. You gave him a dollar; did you give him anything else besides one dollar; why did you give him a dollar?

A. Well, just because I wanted to give it to him.

Q. Any other reason?

A. No."

She did not know the value of the property but testified that it was a seven room modern house. Here again counsel would have been in better position had he stopped his cross-examination. The wife was further asked:

"Q. Were there any peculiar circumstances at or about the time that you took this deed from your husband and gave him $1.00 for this property?

A. No, sir, only that I worked in the restaurant down there, and I worked for a wage and I didn't get it, and I have got six children and I worked hard and didn't get no wages and when the Mister got to drinking and running around I got so tired I decided to leave him and I demanded what was coming to me."

She stated she did not know at that time of the trouble in which he was involved except as she read it in the newspaper.

"Q. So that when this deed was executed to you, you knew that he was in trouble about these cigarettes and you didn't do anything more about it excepting taking this deed and you gave him $1.00, is that right?

A. Well, no, I didn't, I just demanded my money for what I had coming, I just demanded my money."

She stated that he owed her at that time about $780.00 and she repeated, "Yes, sir, I demanded my money."

"Q. Did you demand this money before he got into this trouble or after he got in trouble?

A. I had that money coming to me and he didn't give it to me, and I

threatened to leave him and I wanted my money.

\* \* \* \* \* \*

Q. So at that time you were ready to leave your husband?

A Yes, sir, I was going to leave my husband, yes, sir, there was too much trouble, I was going to leave him and I demanded what was coming to me."

The deed was made to her about a month before he was taken to the penitentiary. She repeated, "Yes, sir, that's what I was interested in my money, yes, sir. I worked hard for it and I had six children and I think I was entitled to it." She stated she was willing to take the property for what her husband owed her. The following question was asked and answer given,

"Q. Did you think it was worth more than what he owed you?

A. Well, I think I was entitled to it."

Mrs. Shroyer could not say what the property was worth.

Sec. 8618 GC provides, in substance, that every conveyance of land made or obtained with intent to defraud creditors of their just and lawful debts or damages shall be utterly void and of no effect.

In the case at bar the creditor's right of action accrued upon the felonious taking of the cigarettes or their felonious receipt by Shroyer. The action was brought at a later date, but did not ripen into a judgment until long after the transfer.

We will briefly sketch the cases that seem to bear upon the question at issue.

Evans v Evans, 30 Oh St 11, holds, in substance, that a voluntary conveyance made by a husband to his wife, through the intervention of a trustee, will not be held void as to future creditors on the mere ground that the husband subsequently became insolvent. Such conveyance will be set aside at the suit of a subsequent creditor only on proof that it was made with intent on the part of the grantor thereby to defraud such subsequent creditor.

One having a valid cause of action, sounding in tort, against such grantor at the time of such conveyance upon which an action was subsequently brought and judgment recovered is to be regarded as a **subsequent creditor.**

See **Fisher v Schlosser, 41 Oh St 147.** In this case the facts are not sufficiently disclosed to enable us to judge to what extent, if at all, they correspond to the facts at bar.

**Pfisterer v Traction Company, 89 Oh St 172,** holds, in substance, that at the time of the conveyance the plaintiff had a valid cause of action for personal injury against the Traction Company upon which he brought his action after the conveyance and recovered judgment. Held, He was a subsequent creditor and in a suit to subject the property transferred to the purchaser to the payment of his judgment, the transfer would be set aside only upon proof of the grantor's actual intent to defraud its creditors, especially where the purchaser has paid a valuable and adequate consideration for the property transferred.

In **Penick v Penick, 5 Oh Ap 416,** decision by Houck, J., it is held,

"An action to set aside a conveyance on the ground of fraud does not lie against a grantor who executed the deed upon which the attack is made prior to the bringing of the suit by the plaintiff, notwithstanding the said deed was not placed on record until after plaintiff had reduced his claim to judgment."

This case being by Houck, J. deserves our special attention, especially P. 420 in which the Judge considers the second proposition that fraud is never inferred but must be proved by clear and convincing evidence. The instrument sought to be set aside is a deed, which the evidence clearly and conclusively shows was properly and legally executed by the grantor and delivered to the grantee,

"and a court of equity can not and will not set it aside upon the ground of alleged fraud as to a creditor unless the claim made by the alleged creditor is fully established by a degree of proof that will warrant such action under the peculiar facts and circumstances indicated by the evidence submitted in the case, applying thereto the well established principles of law applicable to the same."

The court then states that the settled policy is that deeds executed in conformity of law will not be set aside except upon such evidence as will clearly satisfy the court that the claim of fraud has been fully and completely established, the mere preponderance of the evidence not being sufficient.

**Kushmeder v Overton, 26 Oh Ap 74,** holds,

"1. In suit to set aside deed from husband to wife as executed in fraud of creditors, evidence that, at time of transfer, negotiations for settlement of personal injury action by plaintiff against defendant had taken place to defendant's knowledge, held properly stricken, in absence of showing that relation of debtor and creditor existed between plaintiff and defendant.

2. Automobile accident does not in itself establish one causing accident as debtor, when opposite conclusion might be equally made.

3. Relationship of debtor and creditor between parties to automobile accident is determined by date on which judgment for injuries is rendered."

**Ursak v Sivanick, 56 Oh Ap 434,** holds,

"1. Where an action is brought by a creditor under §8618 GC, to set aside a voluntary conveyance of realty made by debtors to their son, it is not necessary to prove fraudulent intent or knowledge on the part of the grantee.

3. A sufficient showing of a purpose to defeat the collection of a debt is made where it appears that a conveyance by the debtors rendered them absolutely insolvent and that it was

made a few days before judgment was taken against them, at which time they knew that judgment was about to be taken."

**Sechrist, Admr. v Veres, 9 OO 492,** Common Pleas Court of Jefferson County, is a very well considered case in which the Court carefully analyzes all the statutes and decisions formerly rendered.

**Allan v Toth, 22 Abs 457,** decision by this Court, opinion by Barnes, J. In this case it was held that §8618 GC is not limited by the provisions of §11105 GC. Fraud, as a matter of law, will be implied from the fact that a debtor gives his property away without retaining sufficient to pay his debts.

"A conveyance from a wife to her husband or vice versa will be looked upon with suspicion if made at the time of actual or threatened insolvency."

In this case insolvency was present and an action to appoint a receiver threatened at the time of the conveyance.

**Edwards v Monning et, 137 Oh St 268,** was decided by the Supreme Court on July 24, 1940, Ohio Bar July 29, 1940. In this case plaintiff's decedent was struck and fatally injured on the night of January 24, 1933, by an automobile owned by defendant. Early the following morning the defendant executed a deed transferring to his sister, the defendant Anna Monning, his undivided half interest in certain realty. This deed was filed in the Recorder's office on the same morning. By the making of the transfer Monning rendered himself insolvent. About two weeks later the decedent died and five and one-half months thereafter the plaintiff filed an action to recover damages for the wrongful death of her husband. On May 3, 1935, plaintiff secured a judgment in the amount of $20,000 against John Monning. On the 24th of July, 1935, plaintiff instituted the action in the Court of Common Pleas to set aside the conveyance of January 25, 1933, and to impress the realty with the lien in the amount of the judgment. The Court of Common Pleas decided in favor of the plaintiff. The conveyance was set aside as fraudulent and the realty ordered sold. This case was affirmed by the Court of Appeals and certified to the Supreme Court as being in conflict with **Kushmeder v Overton, 26 Oh Ap 74.** Weygandt, CJ, in delivering the opinion of the Court. stated, that if Ohio were among the states that have adopted the Uniform Fraudulent Conveyance Act, the contention of the defendants would require no discussion inasmuch as the express provisions of such act authorize a future creditor to set aside a transfer under the circumstances. The plaintiff could not have filed a wrongful death action before the date her husband died, "but under the circumstances of this case the fact is not conclusive". If Monning's intent was to execute a fraudulent conveyance the next morning, it was his manifest purpose to protect himself from the consequences of his negligence * * * . So far as his own conduct with reference thereto was concerned, the only tortious act involved was, in any contingency, his negligence of January 24, 1933—the day before he made the transfer. "Under these circumstances it is the view of this court that Monning should not thus be permitted to escape part of the probable, direct and anticipated consequences of his original act of negligence. The pronouncements in the Evans and Pfisterer cases are modified accordingly. The lower courts were correct in holding the plaintiff a subsequent creditor." The Court then reviews the holdings of lower courts, upon which they based their several judgments that there was an intent to defraud at the time the deed was made, and states, "The actual intent to defraud is obvious and unconscionable."

From these several opinions, which are not in entire harmony, it is deducible that the claim of the plaintiff against the defendant-husband for wrongfully participating in the theft

of the cigarettes did not constitute the plaintiff a then existing creditor. It was necessary that that claim be reduced to judgment, which occurred a number of years after the actual transaction.

The Edwards case, last above cited, holds that after obtaining a judgment for wrongful death the widow is a subsequent creditor of the tort feasor but that, under the circumstances in that case, the widow may maintain an action to set aside the fraudulent conveyance and satisfy the judgment.

In the case at bar, the plaintiff under these rules was a subsequent creditor and as such the obli- ■■■■■■■■■ gation was upon him to produce evidence supporting his claim that the transfer was made to defraud creditors and must do so by the character of evidence so well described by Houck, J. in 5 **Oh Ap** 420.

In the Edwards, Sechrist and Kushmeder cases above cited there was a close concurrence in time between the arising of the cause of action and the transfer and in each . instance where the Court held that the transfer was fraudulent, the probable liability of the grantor of the deed was so manifest that the very fact of the transfer might be sufficient to support the claim of fraud.

In the case at bar the judgment finally obtained by the plaintiff was based upon the unusual claim that the defendant-husband would be liable to the owners of the cigarettes which had been stolen and which he had been convicted of receiving as stolen property. This is a more remote influence to cause a transfer of property than the incidents recited in the other cases where the liability was imminent and apparent. The husband stated in his cross-examination that he made the transfer to his wife because she was entitled to it and because he did not expect to return alive from the penitentiary and the wife gave as consideration for the transfer the fact that her husband owed her $785 and that she had threatened to leave him unless he secured this money to her. The Court is without information as to the relative value of the property and the claim of the wife for services. We can not say that it is disproportionate or otherwise because we have no information upon this point.

This cause is before us on appeal on questions of law and fact. We are of the opinion, upon consid- ■■■■■■■■ eration of all the evidence, that the defendant, William Shroyer, did fraudulently and with intent to defraud, transfer the property to his wife without consideration and that the deed is null and void and that the real estate is. as a matter of fact, now the property of William.

Entry accordingly. Cause remanded.

*HORNBECK, PJ., GEIGER & BARNES, JJ.,* concur.